**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 03-CR-0023-CVE |
| | ) | (06-CV-0298-CVE) |
| AFTAB KHAN AHMED, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

On June 8, 2006, defendant Aftan Khan Ahmed ("Ahmed"), a federal prisoner appearing pro se, filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (Dkt. # 42). Section 2255 provides that "a prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or law of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence."

**I.**

Ahmed owned a convenience store called the Walk in Food Stop in Tulsa, Oklahoma. In the fall of 2001, police began to suspect that large numbers of pseudoephedrine tablets were being sold by Ahmed, and that these tablets were being used to manufacture methamphetamine. When Ahmed purchased pseudoephedrine tablets from his wholesaler, he was told that he could not sell more than two bottles to any particular customer. A confidential informant visited Ahmed's store in December 2001, and attempted to set up a purchase for a large quantity of pseudoephedrine tablets. The informant told Ahmed that the tablets would be used to manufacture "crank," which is a slang term for methamphetamine. At some point during the discussion, Ahmed pointed a gun at the informant

and asked if he could be trusted. Ahmed subsequently sold an undercover officer twelve bottles of pseudoephedrine tablets on January 8, 2002 and 144 bottles on January 9, 2002.

Ahmed received a subpoena to testify before a federal grand jury on March 3, 2003. Ahmed claims that he asked the Assistant United States Attorney ("AUSA") Allen Litchfield if he was the subject of the grand jury's investigation, and he was led to believe that he was not a target of the investigation. He further claims that he was not informed of his right to obtain counsel or his right to remain silent when he testified before the grand jury. Ahmed states that he was questioned about whether the large amount of pseudoephedrine tablets he sold could be used to manufacture methamphetamine, and he "speculated" that this was a possibility. Dkt. # 42-2, at 4.

On March 7, 2003, the grand jury issued a sealed indictment charging Ahmed with two counts of distributing pseudoephedrine tablets with knowledge that the tablets would be used to manufacture methamphetamine.[1] The indictment was unsealed on March 20, 2003, after the United States Marshal took Ahmed into custody. Ahmed was arraigned on March 20, 2003 and released on bond pending trial. Ahmed was born in Pakistan, and claims that he did not understand the criminal process in the United States. He asserts that he did not know he had an absolute right to a criminal trial, and he also believed he was selectively prosecuted because he was a Muslim. According to Ahmed, the AUSA "told [Ahmed] that his faith, his country of origin, and the fact that he was not a citizen would all work against him in a trial in front of a jury selected from a cross section of society in the Tulsa, Oklahoma area." Id. at 4-5.

---

[1] The first count alleged that defendant sold twelve 36-count bottles of pseudoephedrine tablets on January 8, 2002, and the second count alleged that defendant sold one hundred and forty-four 36-count bottles of the same substance on January 9, 2002.

Ahmed entered a guilty plea to count two of the indictment on July 14, 2003 based on a plea agreement with the United States. In the plea agreement, the defendant voluntarily agreed to enter a plea of guilty. In return, the AUSA recommended a two-level reduction in defendant's total offense level for acceptance of responsibility and he agreed to move for an additional one-level reduction at the sentencing hearing. The Court questioned defendant about the voluntariness of his plea:

> The Court: Are you fully satisfied with the counsel, representation, and advice given to you in this case by your attorney, Mr. Fischer?
>
> The Defendant: Yes, ma'am.
>
> The Court: Is your willingness to plead guilty the result of discussions that you or Mr. Fischer have had with the United States?
>
> The Defendant: Yes, ma'am.
>
> The Court: Have you had an opportunity to read the plea agreement?
>
> The Defendant: Yes, ma'am.
>
> The Court: Have you had a chance to discuss it with Mr. Fischer before you signed it?
>
> The Defendant: Yes, ma'am.
>
> The Court: Does it represent all the agreements you have with the United States?
>
> The Defendant: Yes, ma'am.
>
> The Court: Is there anything that you think the United States has agreed to that is not in the plea agreement?
>
> The Defendant: No, ma'am.
>
> The Court: Do you understand the terms of the plea agreement?
>
> The Defendant: Yes, ma'am.

Transcript of Plea, dated July 14, 2003, at 6-7. The plea agreement contained an appellate and post-conviction waiver, which provided that "the defendant agrees to waive all appellate rights including but not limited to those pursued by means of a writ of habeas corpus, save and except claims of ineffective assistance of counsel and sentencing issued [sic] properly raised at sentencing."[2] Dkt. # 18, at 3. Defendant acknowledged that he understood the appellate and post-conviction waiver, and that he intended to plead guilty.

Defendant voluntarily waived his right to a jury trial in the plea agreement, in his petition to enter a plea of guilty, Dkt. # 17, at 1; Dkt. # 18, at 2, and in open court. The Court asked defendant if he understood that he waived his right to a jury trial by entering a guilty plea:

> The Court: Okay. All right. Do understand that as you stand here right now before you enter your guilty plea, you have a right to plead not guilty to the offenses charged against you and to persist in that plea. You would then have a right to a trial by jury and you and you alone can waive, that is give up that right to a jury trial. At a jury trial, to convict you, all 12 members of the jury would have to agree unanimously that you are guilty, or you could waive jury and the Court would determine your guilt or innocence. At trial, you would be presumed to be innocent and the government would have to prove your guilt beyond a reasonable doubt. You would have the right to the assistance of counsel for your defense, the right to see and hear all the witnesses and have them cross-examined in your defense, the right on your own part to decline to testify unless you voluntarily elected to do so in your own defense, and the right to the issuance of subpoenas or compulsory process to compel the attendance of witnesses to testify in your defense. Should you decide not to testify or put on any evidence, those facts could not be used against you. Do you understand that you have all those rights?
>
> The Defendant: Yes, ma'am

---

[2] The government has not invoked the waiver, and the Court may not sua sponte enforce an appellate and post-conviction waiver. United States v. Contreras-Ramos, 457 F.3d 1144, 1145 (10th Cir. 2006) ("the waiver is waived when the government utterly neglects to invoke the waiver"). This Court assumes that the government did not invoke the post-conviction waiver because defendant's claims are based for the most part on alleged ineffective assistance of counsel and a sentencing issue, and would not have fallen within the scope of the waiver.

> The Court: Do you further understand that by entering a plea of guilty, if that plea is accepted by the Court, there will be no trial and you will have waived or given up your right to a trial as well as all those other rights associated with a trial that I just described?
>
> The Defendant: Yes, ma'am.

Transcript of Plea, dated July 14, 2003, at 15-16. The Court found that Ahmed voluntarily changed his plea, and accepted his guilty plea.

At the sentencing hearing on December 12, 2003, the Court sentenced defendant to 135 months in prison and fined defendant $2,000.[3] The Court also imposed a three year term of supervised release following completion of defendant's sentence. Defendant's sentence was determined using an offense level of 36, reduced by three levels for acceptance of responsibility.[4] The offense level of 36 included a two-level enhancement under United States Sentencing Guideline § 2D1.1(b)(1) for possession of a firearm during a drug trafficking offense. Defendant objected to the two-level enhancement, but the Court overruled his objection. Defendant also argued that the government engaged in sentencing entrapment by encouraging defendant to engage in a greater offense than he intended to commit. The Court denied defendant's objection, because there was no evidence that the government engaged in outrageous conduct.

Defendant appealed his sentence to the Tenth Circuit Court of Appeals and challenged the two-level enhancement for possession of a firearm. The Tenth Circuit held that this Court did not

---

[3] The guideline range, based on a total offense level of 33 and criminal history category I, was 135 to 168 months. The total offense level was calculated as follows: base offense level of 34, plus two level enhancement for possession of the firearm, less three point reduction for acceptance of responsibility.

[4] The Court reduced defendant's total offense level by three levels even though the government had evidence that defendant had possibly committed other crimes while on pretrial release.

commit clear error when it applied a two-level enhancement under §2D1.1(b)(1). There was sufficient evidence to support the Court's conclusion that defendant possessed the gun during the commission of a drug offense. Defendant did not satisfy his burden to show that it was "clearly improbable that the weapon was connected with the offense." Dkt. # 41, at 6. No other issues were raised on appeal.

The Tenth Circuit affirmed Ahmed's conviction and sentence on July 14, 2005. Defendant's conviction became final on October 12, 2005 after his time to file a petition for writ of certiorari expired. Fed. R. App. P. 4(b)(1)(A)(i); United States v. Burch, 202 F.3d 1274, 1278-79 (10th Cir. 2000). Therefore, defendant had until October 12, 2006 to file a timely § 2255 motion. Since he filed this § 2255 motion on June 8, 2006, his motion is timely.

**II.**

In his § 2255 motion, defendant challenges his conviction on the grounds that (1) the AUSA committed prosecutorial misconduct by failing to advise defendant that he was the target of the grand jury's investigation, and defense counsel was ineffective because he did not file a motion to suppress statements made by defendant to the grand jury or a motion to dismiss for prosecutorial misconduct; (2) the AUSA singled out defendant for selective prosecution because of his religious beliefs, and defense counsel was ineffective because he did not file a motion to dismiss the indictment on this basis; (3) defendant's attorney failed to perform an adequate investigation before advising defendant to plead guilty; and (4) the Court erred when it applied a two-level enhancement for possession of a firearm during a drug trafficking crime, and defense counsel was ineffective for failing to challenge the constitutionality of the underlying criminal statute at the sentencing hearing. In his reply, defendant argues that he was not fluent in English and he did not understand the

6

criminal proceedings, and defense counsel provided ineffective assistance of counsel when he did not request an interpreter or adequately explain to defendant his Sixth Amendment right to a jury trial.

The government argues that defendant is procedurally barred from raising any of the claims stated in his § 2255 motion because they were not raised on direct appeal. Tenth Circuit precedent is clear that "[s]ection 2255 motions are not available to test the legality of matters which should have been raised on direct appeal." United States v. Warner, 23 F.3d 287, 291 (10th Cir. 1994). Criminal defendants may not use § 2255 motions as a substitute for a direct appeal, and failure to raise an issue at trial or on direct appeal creates a procedural bar for purposes of habeas review. United States v. Cervini, 379 F.3d 987, 990 (10th Cir. 2004); United States v. Barajas-Diaz, 313 F.3d 1242, 1245 (10th Cir. 2002). Procedural default can be excused if defendant can show that cause and prejudice exist to excuse the default or that a fundamental miscarriage of justice has occurred. Barajas-Diaz, 313 F.3d at 1247. Although the Court must construe defendant's pleadings liberally, defendant bears the burden to show cause and prejudice or that a fundamental miscarriage of justice require a court to excuse his procedural default. George v. Perrill, 62 F.3d 333, 335 (10th Cir. 1995).

In essence, each of defendant's claims contains a substantive argument along with an ineffective assistance of counsel claim. Because defendant filed a direct appeal to the Tenth Circuit, defendant's substantive claims are procedurally barred unless he can show cause and prejudice to excuse the procedural default. Warner, 23 F.3d at 291; United States v. Cook, 997 F.2d 1312, 1320 (10th Cir. 1993). To establish cause and prejudice, defendant must show that his counsel was constitutionally deficient by failing to raise the claim as part of defendant's direct appeal and, as a

result of counsel's deficient performance, there was a reasonable probability that the result of the proceedings would have been different. United States v. Magleby, 420 F.3d 1136, 1140 (10th Cir. 2005); Rogers v. United States, 91 F.3d 1388, 1391 (10th Cir. 1996).

In this case, defendant filed a direct appeal to the Tenth Circuit to challenge this Court's imposition of a two-level sentencing enhancement for possession of a firearm during a drug trafficking crime. He did not raise any claims concerning the propriety of the prosecutor's conduct before the grand jury, selective prosecution, the amount of drugs stated in the presentence report, the constitutionality of § 841(b), or his inability to understand English on direct appeal. The government raised the issue of procedural bar in its response to defendant's § 2255 motion, but defendant failed to address this issue in his reply. When the government raises a defense based on procedural bar in its response, the Court does not need to provide additional notice to defendant before finding that his claims are procedurally barred. United States v. Wiseman, 297 F.3d 975, 979 (10th Cir. 2002); United States v. Allen, 16 F.3d 377 (10th Cir. 1994).

In his § 2255 motion, defendant states that these substantive claims are being presented for the first time because of ineffective assistance of appellate counsel. Dkt. # 42, at 10. "When a defendant alleges his appellate counsel rendered ineffective assistance by failing to raise an issue on appeal, we examine the merits of the omitted issue. If the omitted issue is without merit, counsel's failure to raise it 'does not constitute ineffective assistance of counsel.'" Cook, 45 F.3d at 392-93 (citations omitted). Therefore, the Court will consider the merits of each of defendant's claims to determine if counsel was ineffective for raising the issue on appeal. If the Court determines that defendant's claim is without merit, defendant can not show cause to excuse the procedural default, and the claim will be dismissed as procedurally barred.

**A.**

Defendant argues that the AUSA committed prosecutorial misconduct by failing to notify defendant of his target status and, also, that his attorney was ineffective because he did not file a motion to dismiss the indictment or a motion to suppress defendant's statements before the grand jury. Defendant claims that the AUSA should have notified defendant that he was the target of a grand jury investigation before defendant testified, and the AUSA improperly elicited incriminating responses in violation of Miranda v. Arizona, 384 U.S. 436 (1966). The government responds that defense counsel could not have been ineffective for raising this issue, because defendant has no constitutional right to be informed about his target status nor was he entitled to a Miranda warning.

The Sixth Amendment of the United States Constitution guarantees every person accused of a crime the right to have the assistance of counsel at any critical stage of a criminal proceeding. United States v. Gonzalez-Lopez, 126 S. Ct. 2557, 2561 (2006); Mickens v. Taylor, 535 U.S. 162, 166-67 (2002). In Strickland v. Washington, 466 U.S. 688 (1984), the Supreme Court established a two part test to determine if a criminal defendant has received ineffective assistance of counsel. See Rompilla v. Beard, 545 U.S. 374, 380 (2005); Wiggins v. Smith, 539 U.S. 510, 521 (2003). First, the defendant must show "that counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. Second, "counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution." Id. at 692. The right to the effective assistance of counsel ensures fairness in the criminal process, but this right is not implicated "[a]bsent some effect of [the] challenged conduct on the reliability of the [judicial] process." Lockhart v. Fretwell, 506 U.S. 364, 369 (1993) (quoting United States v. Cronic, 466 U.S.

9

648, 658 (1984)). Courts should avoid reviewing attorney performance under the "distorting effects of hindsight" and must apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689.

Defendant argues that the AUSA misled him into believing that he was called as a witness simply to assist in an ongoing grand jury investigation, but he never told defendant that he was the target of the grand jury's investigation. As a matter of law, the AUSA had no obligation to inform defendant that the grand jury was investigating him. In United States v. Washington, 431 U.S. 181 (1977), the Supreme Court found that neither the Self Incrimination nor the Due Process Clauses of the Fifth Amendment require the government to notify a person of their target status. Id. at 190 n.6. This Court has found no authority that would have required the AUSA to inform defendant that he was the target of the grand jury's investigation and, in fact, no court has found that any such constitutional right exists. United States v. Meyers, 123 F.3d 350, 355-56 (6th Cir. 1997); United States v. Goodwin, 57 F.3d 815, 818-19 (9th Cir. 1995); United States v. Babb, 807 F.2d 272, 277 (1st Cir. 1986). Therefore, defendant's counsel could not have been constitutionally deficient by failing to raise this issue.

Defendant also argues that he was not given a Miranda warning before his grand jury testimony. However, no such warning was required. In United States v. Mandujano, 425 U.S. 564 (1976), the Supreme Court distinguished the grand jury setting from a custodial interrogation, and found that Miranda was not intended to be construed so broadly. Id. at 580. The Court stated:

> The Court thus recognized that many official investigations, such as grand jury questioning, take place in a setting wholly different from custodial police interrogation. Indeed, the Court's opinion in *Miranda* reveals a focus on what was seen by the Court as police "coercion" derived from "factual studies (relating to police violence and the 'third degree' . . . physical brutality beating, hanging, whipping and to sustained and protracted questioning incommunicado in order to

10

> extort confessions . . . ." To extend these concepts to questioning before a grand jury inquiring into criminal activity under the guidance of a judge is an extravagant expansion never remotely contemplated by this Court in *Miranda*; the dynamics of constitutional interpretation do not compel constant extension of every doctrine announced by the Court.

Id. at 579-80; see also Minnesota v. Murphy, 465 U.S. 420, 431 (1984). Consequently, defendant's attorney had no duty to file a motion to suppress on the basis that the AUSA did not warn defendant before defendant's grand jury testimony, because defendant did not have a right to a Miranda warning in the grand jury setting.

Defendant has not shown that the AUSA's actions concerning the grand jury amount to prosecutorial misconduct, because defendant did not have a constitutional right to be informed of his target status nor did the AUSA need to warn defendant. Thus, defendant's counsel was not ineffective for failing to raise this issue on appeal. This substantive ground for relief is procedurally barred. To the extent that defendant challenges his trial counsel's performance, the Court finds that counsel was not constitutionally deficient for failing to raise this argument, and defendant's claim for ineffective assistance of counsel is denied.

**B.**

Defendant argues that he was selectively prosecuted because of his religious beliefs, and his attorney should have raised this issue on appeal. Defendant also argues that his trial counsel was ineffective because he did not file a motion to dismiss the indictment based on alleged selective prosecution. Defendant, a Muslim, asserts that he was prosecuted while other similarly situated Christians were not prosecuted. A prosecutor has a significant amount of discretion when deciding which cases to pursue, but this discretion is subject to constitutional constraints. United States v. Batchelder, 442, U.S. 114, 124 (1979). To state a claim for selective prosecution, a criminal

defendant must present clear evidence that the "federal prosecutorial policy 'had a discriminatory effect and that it was motivated by a discriminatory purpose.'" United States v. Armstrong, 517 U.S. 456, 465 (1996). Defendant has the burden to prove that "the Government's selection of him for prosecution was invidious or in bad faith and was based on impermissible considerations such as race, religion, or the desire to prevent the exercise of constitutional rights." United States v. Davis, 339 F.3d 1223, 1228 n.3 (10th Cir. 2003) (quoting United States v. Salazar, 720 F.2d 1482, 1487 (10th Cir. 1983)). The Tenth Circuit has described the standard, even to obtain to discovery on a claim for selective prosecution, as "demanding," and a district court should be hesitant to intrude upon discretionary functions of the administrative branch of the government. United States v. Alcaraz-Arellano, 441 F.3d 1252, 1264 (10th Cir. 2006).

Defendant alleges that he was simply one of many merchants who sold large quantities of pseudoephedrine tablets, but he was singled out for prosecution because of his religious beliefs. He claims that the AUSA told defendant to "go back to where he came from" and the case would be dismissed. Dkt. # 42-2, at 26. He also suggests that the investigation was initiated shortly after the terrorist attacks of September 11, 2001, and this provides additional evidence that prosecutors were motivated to file charges against Muslims. Based on these facts, there is no possibility that defendant could have stated a claim for selective prosecution and obtained discovery if this claim had been raised by his attorney before trial. This is not the type of "clear" evidence that satisfies the demanding standards for a selective prosecution claim and, even if defendant's attorney had raised this argument before trial, defendant would not have been entitled to relief. See Alcaraz-Arellano, 441 F.3d at 1265 (citing statistical evidence of disparate prosecution rates for different races); United States v. Deberry, 430 F.3d 1294, 1300-01 (10th Cir. 2005) (requiring evidence that

similarly situated individuals were not prosecuted even when prosecutor's statement may have suggested that he acted with discriminatory intent). In this case, there is no evidence, other than defendant's unsubstantiated assertion, that similarly situated individuals practicing the Christian faith were not prosecuted. Appellate counsel was not ineffective when he failed to raise this issue on appeal, and this substantive claim is procedurally barred. In addition, trial counsel was not ineffective for neglecting to file a motion to dismiss the indictment based on selective prosecution, because that motion had no chance of success. This ground for relief is denied.

## C.

Defendant alleges that his attorney was ineffective because he allowed defendant to plead guilty and failed to perform an adequate investigation of the facts of the case. Particularly, defendant claims that his attorney did not object to the amount of pseudoephedrine used to calculate defendant's guideline range and did not investigate the amount of pseudoephedrine sales at other stores. The government responds that, even if defense counsel had compared the amounts of pseudoephedrine tablets sold at other stores, defendant would still have been convicted, because it has no bearing on his guilt or innocence.

There is no evidence to suggest that defense counsel performed an inadequate investigation before advising defendant to plead guilty. Defendant claims that his attorney should have investigated sales figures of pseudoephedrine tablets from other stores, because this would have shown that defendant sold fewer pseudoephedrine tablets than other stores. A competent attorney must investigate the facts of the case and make an estimate of the possible sentence before advising a defendant to plead guilty. Barkell v. Crouse, 468 F.3d 684, 692-93 (10th Cir. 2006); Moore v. Bryant, 348 F.3d 238, 241 (7th Cir. 2003). However, defendant makes no attempt to show how this

evidence would have changed defendant's decision to enter a guilty plea or that defendant would have received a lesser sentence. Assuming that defendant's factual allegation is true, the fact that other stores may have sold greater amounts of pseudoephedrine tablets does not change the fact of defendant's guilt nor is it relevant to any sentencing guideline considered by the Court. Therefore, defense counsel can not be found constitutionally deficient for failing to investigate the amounts of pseudoephedrine sales at other stores, because it would not have been a reasonable use of defense counsel's time to do so. See Strickland, 466, U.S. at 690-91; Felder v. Johnson, 180 F.3d 206, 214 (5th Cir. 1999).

Defendant claims that he was convicted of selling 144 bottles of pseudoephedrine tablets, and the drug quantity in the presentence report should have been 31.104 grams of pseudoephedrine[5] instead of 492 grams. He asserts that this would have resulted in a guideline range of 57 to 71 months, and defense counsel was ineffective for failing to object to the drug quantity stated in the presentence report. In some circumstances, omission of a valid objection to the drug quantity used to calculate the defendant's sentence can constitute ineffective assistance of counsel. See Jansen v. United States, 369 F.3d 237, 244 (3d Cir. 2004); Lindsey v. United States, 310 F.3d 606, 608 (8th Cir. 2002). However, defendant ignores the fact that the presentence report calculated the drug quantity based on all relevant conduct, not just the amount of pseudoephedrine in the bottles sold to the undercover officer on January 9, 2002. Defendant sold pseudoephedrine on January 8, 2002 and continued to sell pseudoephedrine tablets in large quantities after he was indicted on March 7, 2003, and up until the time he was convicted. He has not presented any legal basis to suggest that

---

[5] Defendant is completely mistaken in this regard. One hundred forty-four bottles of 36 count sixty-milligram tablets is 311.04 grams of pseudoephedrine and calls for a base offense level of 34 under United States Sentencing Guideline § 2D1.11(d)(3), which was the base offense level used.

the Court erred by considering additional sales as relevant conduct for purposes of sentencing. Finally, it is noted that the base offense level of 34 is applicable with or without the additional sales. See footnote 5, supra.

To the extent that defendant challenges the Court's consideration of conduct outside of the indictment to determine the drug quantity, this was permissible under Tenth Circuit precedent interpreting Apprendi v. New Jersey, 530 U.S. 466 (2000), at the time defendant was convicted. United States v. Trammel, 7 Fed. Appx. 829, at *2 (10th Cir. Mar. 13, 2001) (unpublished) ("Judges may still ascertain drug quantities by a preponderance of the evidence for the purpose of calculating offense levels under the Sentencing Guidelines, so long as they do not sentence above the statutory maximum for the jury fixed crime").[6] Defendant has not identified any specific conduct that was improperly considered by the Court at his sentencing, but he simply makes the conclusory argument that any source of drugs not identified in the indictment should not have been considered. This argument is meritless, and his counsel was not ineffective for failing to raise this objection before the trial court or on appeal.

**D.**

Defendant challenges the Court's decision to impose a two-level sentencing enhancement for possession of a firearm during a drug trafficking crime. Defendant provides a 48 page argument addressing the alleged unconstitutionality of 21 U.S.C. § 841(b) under the Supreme Court's decision in Apprendi. On direct appeal, defendant challenged this Court's factual findings concerning the application of §2D1.1 of the United States Sentencing Guidelines, but he did not challenge the constitutionality of § 841. Defendant argues that his appellate counsel was ineffective when he did

---

[6]   Unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. 32.1: 10th Cir. R. 32.1.

15

not raise this precise issue on direct appeal to the Tenth Circuit, and the Court should excuse his procedural default. Therefore, the Court will consider the merits of defendant's argument to determine if cause and prejudice exists to excuse the procedural default.

In this case, defendant was convicted of knowingly or intentionally distributing a chemical known to be used in the manufacturing of a controlled substance under 21 U.S.C. § 841(c)(2), and his discussion of the constitutionality of § 841(b) is irrelevant. Even if the Court were to conclude that § 841(b) is unconstitutional, defendant was convicted of an offense under § 841(c)(2) and there would be no basis to set aside defendant's conviction. In addition, the Tenth Circuit has affirmed the constitutional validity of § 841(b) under Apprendi, and defendant's legal argument is meritless. United States v. Cernobyl, 255 F.3d 1215, 1219 (10th Cir. 2001). Therefore, defendant's claim that his conviction was based on an unconstitutional statute is meritless, and the Court finds that defendant's claim is procedurally barred. To the extent that defendant argues his trial counsel was ineffective for raising this argument, the Court finds that trial counsel was not ineffective for failing to raise an argument with no chance of success.

**E.**

In his reply, defendant argues that he was unfamiliar with the American legal system, and he states he did not understand that he had a constitutional right to a jury trial. Defendant suggests that his attorney advised him that he did not have a right to go to trial unless the prosecutor consented, and that defense counsel "prayed [sic] upon Defendant's lack of understanding of the manner in which the criminal justice system works in the United States." Dkt. # 61, at 6. Defendant argues that his counsel was ineffective because he did not request an interpreter or adequately explain to defendant his Sixth Amendment rights. It appears that substantive portion of this claim

is procedurally barred, because it was not raised on direct appeal. The Court will consider the merits of the argument to determine if cause and prejudice exist to excuse the procedural default.

Defendant's claim that he did not understand the American legal system is directly refuted by his statements during the change of plea hearing and the representations in the plea agreement and the petition to enter a plea of guilty. At the change of plea hearing, the Court thoroughly explained defendant's legal rights and the consequences of a guilty plea. As noted above, the Court informed defendant that he had a right to trial, that the jury would be required to reach a unanimous verdict to convict him, and that the government had the burden to prove defendant's guilt beyond a reasonable doubt. Transcript of Plea, dated July 14, 2003, at 15-16. Defendant acknowledged that he understood the specific rights he waived by changing his plea to guilty, and at no time did he notify the Court that he was having any difficulty understanding the proceedings or that he needed an interpreter. See United States v. Reyes-Ramirez, 2006 WL 3900110, at *5 (D. Ariz. Jan. 9, 2006) (denying ineffective assistance of counsel claim when the defendant did not tell his counsel or the court that he could not understand the proceedings); Razavi v. Olivarez, 1995 WL 16845, at *3 (N.D. Cal. Jan. 12, 1995) (habeas petitioner was provided a thorough explanation of his rights before he pled guilty and could not complain about counsel's performance due to misunderstanding of criminal justice system).

In this case, defendant made no attempt to notify the Court that he did not understand his rights and defendant's interactions with the Court during the change of plea and sentencing hearing did not suggest that defendant had any problems understanding the proceedings. It is clear from the record that defendant's rights were explained to him before he entered a guilty plea, and he affirmatively stated that he understood what rights he was waiving. The Court also notes that

17

defendant never notified the Court that he had any problem understanding English nor did he request an interpreter.[7]  Appellate counsel had no duty to raise this argument on appeal, because there was nothing in the record that would have put appellate counsel on notice of this claim.  Therefore, the substantive portion of this claim is procedurally barred.  Defendant has also not shown that his trial counsel provided ineffective assistance of counsel by failing to explain to defendant his Sixth Amendment right to a jury trial or by failing to request an interpreter.

**IT IS THEREFORE ORDERED** that defendant's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Dkt. # 42) is **denied**.  A separate judgement is entered herewith.

**DATED** this 22nd day of August, 2007.

_____
CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT

---

[7]  This Court is vigilant in ensuring that any defendant with need of an interpreter is provided one, and this Court also recalls defendant, his change of plea, and his sentencing.  At no time was there any hint or suggestion of a language problem or need for an interpreter, nor did defendant or his counsel ever express any concern that defendant could not understand English.  A review of the relevant transcripts shows that defendant understood the Court's questions and the proceedings.